**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kara Skelton,<br><br>   Plaintiff,<br><br>v.<br><br>Arizona State University, et al.,<br><br>   Defendants. | No. CV-17-01013-PHX-GMS<br><br>**ORDER** |

For the following reasons Defendants Arizona State University and the Arizona Board of Regent's ("ABOR's") Motion for Summary Judgment (Doc. 39) is granted.

## BACKGROUND

In April 2014, Plaintiff Kara Skelton was admitted to the University's Physical Activity, Nutrition, and Wellness ("PANW") program, and was awarded full-tuition remission as well as stipends for a quarter-time Research Associate position and a quarter-time Teaching Associate position. Dr. Bruening was Ms. Skelton's mentor for the program.

In January 2015, Ms. Skelton informed Dr. Bruening that she was pregnant with her second child. Ms. Skelton asserts that Dr. Bruening was "shocked and taken aback" and explained that "she would have to rethink [her] RA position and study coordinator position" for the upcoming fall semester, and made a reference to how she would have to "problem solve" around her pregnancy. (Doc. 45-1 at 23). Later that month, Dr. Bruening expressed disappointment with how Ms. Skelton conducted herself at a conference and

noted that Ms. Skelton was having issues with her productivity. Ms. Skelton responded that she felt like she needed to apologize for her pregnancy, but Dr. Bruening reassured her she did not need to apologize. At the time, Ms. Skelton thanked Dr. Bruening for her "willingness to support me at what is a difficult time in the program and my personal life." (Doc. 40, Ex. L).

On February 6, Ms. Skelton filed a complaint with the Office of Equity and Inclusion ("OEI") alleging that Dr. Bruening was treating her differently after learning she was pregnant. (Doc. 40, Ex. A, 15).

Later in February, Ms. Skelton told Dr. Bruening that she was considering withdrawing from one of her classes. Dr. Bruening expressed concern about this, because she was afraid that dropping the course would impact Ms. Skelton's ability to pass her progressive exams, which were required for her to continue in the PANW program. Dr. Bruening suggested that Ms. Skelton could take a three week break from her Research Associate position, to help her get caught up on her school work. Around the same time, Skelton emailed the director of the PANW program, Dr. Swan, and expressed that she was "having some personal issues (my son is very sick and has been for a while now)" and was debating whether she should drop one of her courses. After further discussion, Dr. Swan allowed her to drop the course.

On February 19, Dr. Bruening and Dr. Vaughn met with Skelton to address her concerns from the OEI complaint. Dr. Bruening apologized for her remarks about "problem solving" around Ms. Skelton's pregnancy, reassured her that she did not take away any opportunities or benefits from her because of her pregnancy, and discussed the critical tasks they would reassign during her anticipated maternity leave. During the meeting, Dr. Bruening again reminded Ms. Skelton that she was behind on some of her course work. Following this meeting, Ms. Skelton did not file any additional reports to OEI.

In March, Dr. Bruening emailed Ms. Skelton and another graduate student to remind them that she expected them to complete their work in the lab during spring break. Ms.

Skelton responded that she would be unable to come in to the lab, because she had not arranged for childcare. Dr. Bruening said that this was unacceptable, because the work could not be completed from home, but agreed to schedule a meeting with Ms. Skelton to discuss potential arrangements. Ms. Skelton asked Dr. Swan to attend the meeting, and she did. After the meeting, Dr. Bruening agreed that Ms. Skelton could work from home during spring break.

In April, Ms. Skelton began to look for a new mentor that would allow her to continue in the program without working under Dr. Bruening. She met with another professor to discuss that possibility. On April 9, Dr. Bruening and Ms. Skelton exchanged emails where Ms. Skelton confirmed that she had "chosen to work with a different mentor" and that Dr. Bruening "should no longer pay my stipend and tuition remission starting summer 2015." (Doc. 40 Ex. V).

Later that month, Dr. Swan emailed the members of the PAWN staff noting that Ms. Skelton was likely going to fail a class that would prevent her from taking her progressive exams. Then, in early May, Ms. Skelton withdrew from her remaining classes, which meant she could no longer sit for her progressive exams. Ms. Skelton then transferred to a different doctoral program at the University of Alabama Birmingham, and began her studies there in the fall of 2015.

Ms. Skelton filed this lawsuit in April 2017, alleging sex discrimination under Title IX and seeking compensatory and punitive damages. The Arizona Board of Regents moves for summary judgment, arguing that it was not deliberately indifferent to Ms. Skelton's complaints of pregnancy discrimination, and that many of her claims are barred by the statue of limitations.

**DISCUSSION**

**I. Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence, viewed in the light

most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

**II. Analysis**

    **A.    The Statute of Limitations Bars Most of Ms. Skelton's Discrete Claims**

The statute of limitations for a Title IX claim is determined by the state law governing personal injury claims. *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). In Arizona, the statute of limitations period for a personal injury claim is two years. A.R.S. § 12-542(1). Ms. Skelton filed her complaint in this case on April 5, 2017, which is more than two years after most of the alleged violations of Title IX took place.

To avoid the bar imposed by the statute of limitations, Plaintiff argues that her claims are saved by the continuing violation doctrine. (Doc. 44 at 15). But for that doctrine to apply, Plaintiff must point to facts that establish that she suffered from a hostile work environment. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–116 (2002) (explaining that the continuing violations doctrine tolls the statute of limitations for hostile environment claims, but not for discrete actions); *Stanley*, 433 F.3d at 1136. Plaintiff's reference to a hostile work environment was raised for the first time during her response to Defendant's Motion for Summary Judgment. A new theory of liability may not be added

at the summary judgment phase as it "would prejudice the defendant who faces different burdens and defenses under this second theory of liability." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Accordingly, Plaintiff's discrete claims that Dr. Bruening took opportunities away from her because of status as a pregnant woman and retaliated against her by refusing to hold weekly meetings are untimely. However, because Title IX does not "bar an employee from using the prior acts as background evidence in support of a timely claim," *National R.R. Passenger Corp*, 536 U.S. at 113, Ms. Skelton may use those actions as evidence that she was forced out of her position at the University.

### C. Ms. Skelton's Remaining Title IX Claim Fails

#### 1. Ms. Skelton has not demonstrated that she was constructively discharged.

Ms. Skelton's single timely claim is that she was forced to abandon her position in the PANW program because of the discriminatory conduct of Dr. Bruening. Because Ms. Skelton voluntarily agreed to give up her tuition and position as a Research Associate for Dr. Bruening, she must demonstrate that she was constructively discharged. *See Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (concluding that evidence of cross-country transfer and demotion was insufficient as a matter of law to establish constructive discharge). Constructive discharge occurs where "the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). To demonstrate constructive discharge, Ms. Skelton must point to facts from which a jury could infer "conditions so intolerable that a reasonable person would leave the job." *Id.*

Ms. Skelton fails to meet that high burden. She points to the fact that Dr. Bruening stated that she would have to "problem-solve" around her pregnancy, that Dr. Bruening deprived her from an opportunity to submit an abstract on an article because of her pregnancy, that Dr. Bruening decided not to place her in a study coordinator position, and that Dr. Bruening admonished her for failing to attend the second day of a conference. She

cites these actions to support her more general, conclusory allegation that there was "continuing hostility" from Dr. Bruening that forced her to search for another faculty advisor, and ultimately leave the program.

But these facts, especially when viewed along with the other actions ASU took during the spring semester, are insufficient to establish the extraordinary and egregious conditions needed for a constructive discharge claim. During that semester, ASU allowed her to take a three-week paid break from her RA position to focus on her classes, allowed her to drop a class, and gave her flexibility that she requested to perform her RA position at home so that she could care for her young child. After Ms. Skelton filed a complaint with ASU, Dr. Vaughn contacted Dr. Bruening very quickly to discuss Ms. Skelton's concerns, and then held a meeting with Ms. Skelton shortly thereafter. Dr. Bruening apologized for any misunderstanding and promised to accommodate her pregnancy and anticipated maternity leave. And around the same time, Ms. Skelton thanked Dr. Bruening for her "willingness to support me at what is a difficult time in the program and my personal life." (Doc. 40, Ex. L). What's more, Dr. Swan assisted in mediating disputes between Ms. Skelton and Dr. Bruening and ended up writing Ms. Skelton a letter of recommendation that she used to transfer schools. Taken collectively, these facts are insufficient evidence from which a jury could conclude that Ms. Skelton's working conditions became intolerable.

### 2. ASU Was Not Deliberately Indifferent to Ms. Skelton's Complaints of Pregnancy Discrimination.

Finally, even if Ms. Skelton could demonstrate that she was constructively discharged from her position, she has failed to establish that the University was deliberately indifferent to her complaints about pregnancy discrimination. To receive an award of money damages from the Board of Regents, Ms. Skelton must demonstrate that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 290 (1998). To demonstrate that ASU failed to adequately

respond, Ms. Skelton must show that ASU was deliberately indifferent to her complaints of pregnancy discrimination. Deliberate indifference occurs where the response "is clearly unreasonable in light of the known circumstances." *Reese v. Jefferson Sch. Dist. No. 13J*, 208 F.3d 736, 739 (9th Cir. 2000).

Ms. Skelton does not point to any evidence from which a jury could conclude that the University was deliberately indifferent to her complaints. Shortly after receiving her OEI complaint, the University scheduled a meeting to allay her concerns, and Dr. Bruening apologized for any confusion and assured Ms. Skelton that she would accommodate her pregnancy. And when Ms. Skelton complained about not being able to work from home during spring break, Dr. Swan met with her and Dr. Bruening, and the University allowed her to work from home. Finally, the University accommodated to her request to seek out an additional mentor which would allow her to avoid working with Dr. Bruening. Plaintiff points to no evidence from which a jury could conclude that the University was deliberately indifferent. Rather, the University responded to each of her concerns that she expressed. Because Ms. Skelton is only seeking monetary relief, this is an additional, independent reason for granting Defendant's Motion for Summary Judgment.

## CONCLUSION

Most of Ms. Skelton's claims are barred by the statute of limitations. Her remaining claim—that she was forced out of her position—lacks merit. Thus, the Court will grant the Motion for Summary Judgment.

**IT IS THEREFORE ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 39) is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 6th day of March, 2019.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge